IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| TONY HOPPS, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF TAMPA, DETECTIVE GENE STRICKLAND, DETECTIVE J.D. O'NOLAN, DETECTIVE GEORGE MCNAMARA, AND AS-OF-YET UNKNOWN EMPLOYEES OF THE CITY OF TAMPA, <br><br> Defendants. | Case No: 24-cv-02806-VMC-AEP <br><br> Judge Virginia M. Hernandez Covington |

**PLAINTIFF'S MOTION TO APPOINT AND
SUBSTITUTE PERSONAL REPRESENTATIVES**

Plaintiff requests that this Court appoint and substitute special representatives to defend this lawsuit on behalf deceased defendants, as follows:

Plaintiff Tony Hopps spent almost 30 years in prison for a robbery he had nothing to do with. Seeking redress and accountability after his exoneration, Mr. Hopps filed this lawsuit alleging federal civil rights violations under 42 U.S.C. § 1983. Following that, Mr. Hopps learned that two of the named defendants (Detective O'Nolan and Detective McNamara) are deceased. Mr. Hopps's claims survive against these deceased wrongdoers, but there is no state court procedure that allows him to include them in this lawsuit. Accordingly, Mr. Hopps asks this Court to assist pursuant to 42 U.S.C. § 1988, which requires federal courts to provide avenues to relief in federal civil rights actions when state courts cannot.

1

## RELEVANT FACTUAL BACKGROUND

Plaintiff alleges that in January 1990, Ruby and Dunbar Dyches were robbed by a Black man with a moustache and no beard, who was wearing camouflage pants and a hat. Mr. Hopps, who had a full beard, was across town with Defendant Strickland around the time of the robbery, and he was not wearing camouflage pants or a hat. Defendant Strickland took a picture of him depicting his beard. The next day, police apprehended a car containing Ms. Dyches's stolen purse, and four Black men were spotted running from the car. At that time, Mr. Hopps was in police custody for another investigation.

Defendant O'Nolan headed up the investigation into the Dyches robbery. Despite that there was a current photograph depicting Mr. Hopps with a full beard, Defendant O'Nolan got an old photo of Mr. Hopps—in which he did not have a beard—and put it in a photo lineup, which he then mailed to the Dycheses. For his part, Defendant McNamara had asked Mr. Hopps to help him locate a suspect in a different crime, but Mr. Hopps refused, and McNamara decided to pin the Dyches robbery on Mr. Hopps.

Defendants O'Nolan, Strickland, and McNamara also included in the lineup photographs of five people who had been suspects in *other* robberies. Each of these defendants knew it was highly improper to put multiple suspects in a photo lineup. After the Dycheses made their identifications, they mailed Defendant O'Nolan a letter, but Defendant O'Nolan never disclosed the letter. The Dycheses' false and improperly obtained identifications were used to charge and prosecute Mr. Hopps.

Mr. Hopps fought for 31 years to prove his innocence. In 2021, the State's Attorney's Conviction Review Unit began reinvestigating the case and made several key

2

findings, including that (a) the photo array was improper given the manner in which it was administered; (b) Plaintiff did not match the description of the offender that the Dycheses gave to the Defendant Officers; and (c) Plaintiff could not have committed the robbery given the fact that he was at his home and subsequently detained by Defendant Strickland around the same time as the robbery. *Id.* at ¶ 58. The State decided that it could no longer stand behind Mr. Hopps's conviction, and soon the court overturned the conviction and the charges were dismissed. *Id.* at ¶¶ 59-60.

On December 5, 2024, Mr. Hopps timely filed his complaint naming as defendants Detectives O'Nolan, McNamara, and Strickland. Defense counsel informed Mr. Hopps that O'Nolan and McNamara both passed away in 2022. Mr. Hopps identified that no estate had been opened for either of them and set about opening estates and appointing representatives to defend this lawsuit. However, Florida's statute of repose, Fla.St. § 733.710(1), appears to prohibit this relief in Florida state court: "Notwithstanding any other provision of the code, 2 years after the death of a person, neither the decedent's estate, the personal representative, if any, nor the beneficiaries shall be liable for any claim or cause of action against the decedent, whether or not letters of administration have been issued, except as provided in this section."

Given that this state law could prevent Mr. Hopps from pursuing his civil rights action against these two defendants, Mr. Hopps now asks this Court to invoke its authority under 42 U.S.C. § 1988 to effectuate the purpose of 42 U.S.C. § 1983, and allow him to continue pursuing his claims based on these two individuals' misconduct.

## ARGUMENT

Mr. Hopps's request is straightforward: He asks this Court to assist him pursuing a federal civil-rights claim against alleged wrongdoers who have died. 42 U.S.C. § 1983 does not provide a specific procedure to do this, but 42 U.S.C. § 1988 instructs this Court to borrow a procedure from state law where state law furthers the remedial purpose of Section 1983, and otherwise allows this Court to fashion its own remedy if state law falls short. Florida law establishes that his claims against these deceased wrongdoers survive their deaths, but because Mr. Hopps will be unable to open estates for O'Nolan and McNamara, Mr. Hopps asks this Court to exercise its authority to appoint special representatives to defend the case on behalf of the deceased wrongdoers. This approach is consistent with Section 1988's mandate that state law cannot frustrate Section 1983 actions.

Section 1983 was enacted to create a civil cause of action for anyone whose federal rights have been deprived by a person acting under state law. 42 U.S.C. § 1983. "The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Robertson v. Wegmann*, 436 U.S. 584, 590-91 (1978). The Supreme Court has explained that Section 1983 "provide[s] a remedy, to be broadly construed, against all forms of official violation of federally protected rights." *Dennis v. Higgins*, 498 U.S. 439, 445 (1991) (citation omitted) (alteration in original).

**I.      This Court Can Borrow from State Law to Effect Section 1983's Remedial Purpose, but State Law Cannot Be Used to Eliminate Section 1983 Claims**

If Section 1983 is silent on a topic relevant to a civil rights case, courts should "turn to 'the common law, as modified and changed by the constitution and statutes of the [forum] State,' as long as these are 'not inconsistent with the Constitution and laws of the United States.'" *Robertson v. Wegmann,* 436 U.S. 584, 588 (1978) (quoting 42 U.S.C. § 1988). "Of particular importance is whether application of state law 'would be inconsistent with the federal policy underlying the cause of action under consideration.'" *Id.* at 590 (quoting *Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 465 (1975)); *see also Moor v. Alameda County*, 411 U.S. 693, 703 (1973); *Wilson v. Garcia*, 471 U.S. 261, 269 (1985). If state law would conflict with the purposes of Section 1983, this Court can fashion its own remedy to effect Section 1983's purpose.

**A.      Florida Law Allows Claims to Survive Death of Wrongdoer to the Alleged Wrongdoer's Personal Representative**

As a threshold matter, Section 1983 does not address whether the cause of action survives the death of the alleged wrongdoer, so federal courts must look to state law to determine whether the cause of action survives. In Florida, the cause of action survives: "No cause of action dies with the person. All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law." Fla.St. § 46.021. Florida law also provides: "The wrongdoer's personal representative shall be the defendant if the wrongdoer dies before or pending the action." Fla.St. § 768.20. Thus, Mr. Hopps's claims survive against O'Nolan and McNamara to their personal representatives. *See also Cameron v. Mittuch*, 113 So. 2d 389, 390 (Fla. Dist. Ct.

App. 1959) ("a cause of action for a tort survives the death of the tort-feasor and may be maintained against his personal representative"); *Roth v. Cox*, 210 F.2d 76, 79 (5th Cir. 1954), *aff'd*, 348 U.S. 207, 75 S. Ct. 242, 99 L. Ed. 260 (1955) ("Under the common law of Florida as modified by the statutes of the state a cause of action for a tort survives the death of the tort-feasor and may be maintained against his personal representative").

    **B.**    **This Court Must Appoint a Personal Representative to Carry Out Section 1983's Purpose**

With Mr. Hopps's right to bring this action firmly established, but with the statute of repose frustrating his ability to open an estate and have a personal representative appointed in state court, this Court must step in and fashion a mechanism to effectuate the purposes of Section 1983. Indeed, "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bell v. Hood*, 327 U.S. 678, 684 (1946); 81 A.L.R. Fed. 3d Art. 5 (2023) ("Consequently, 42 U.S.C.A. § 1988 directs courts to determine whether a suitable remedy is provided by the law of the state in which the court presides, and if a governing law exists the court may apply it, unless it is found to be inconsistent with the Constitution or federal law, in which case the court may fashion a suitable remedy."); *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1506 (10th Cir. 1990) (finding state law insufficient to carry out purposes of § 1983 and concluding that "the federal courts must fashion a federal remedy"); *Craig v. Cnty. of Orange*, No. SACV1700491CJCKESX, 2019 WL 12379198, at *5 (C.D. Cal. Sept. 5, 2019), *aff'd sub nom. Craig v. Petropulos*, 856 F. App'x 649 (9th Cir. 2021); *see also Acebal v. United*

6

*States*, 60 Fed. Cl. 551, 557 (2004) (federal courts can appoint personal representative to defend lawsuits on behalf of deceased defendants, absent a state procedure to do so); *Kaady v. City of Sandy*, No. CV. 06-1269-PK, 2008 WL 5111101, at *14 (D. Or. Nov. 26, 2008)).

The All Writs Act also empowers this Court to make this appointment to aid its jurisdiction over this federal civil rights case. 28 U.S.C. § 1651; *United States v. Delgado*, No. 6:24-CV-977-JSS-LHP, 2024 WL 4606083, at *1 (M.D. Fla. Oct. 29, 2024) (appointing personal representative to defend law suit); *United States v. Pansier*, No. 17-C-1740, 2020 WL 8299753, at *1-2 (E.D. Wis. Dec. 7, 2020) (under All Writs Act, appointing personal representative for sole purpose of defending matter when no estate had been opened); *Cyr v. United States*, No. 3:21-CV-01869-JR, 2023 WL 6380030, at *3 (D. Or. Aug. 11, 2023), *report and recommendation adopted*, No. 3:21-CV-01869-JR, 2023 WL 6381345 (D. Or. Sept. 29, 2023) ("And, while Oregon law generally vests the appointment of personal representatives with the probate court, precedent makes clear that district courts may make such appointments under the All Writs Act in furtherance of federal tax litigation."); *Murphy v. United States*, No. 3:18-CV-2809-E-BK, 2019 WL 13043047, at *1 (N.D. Tex. Oct. 16, 2019) ("Pursuant to the All Writs Act, 28 U.S.C. § 1651, the Court now appoints a personal representative for the estate of Weiner for the sole purpose of defending against this litigation.").

Thus, this Court has authority to fashion a remedy that will allow Mr. Hopps to pursue his civil rights claims against Mr. O'Nolan and Mr. McNamara. In this case, consistent with Florida law, the appropriate remedy is to appoint personal representatives

to defend the matter on O'Nolan's and McNamara's behalf. Fla.St. § 768.20 ("The wrongdoer's personal representative shall be the defendant if the wrongdoer dies before or pending the action.").

Robert Hines, a Tampa-based probate attorney, has agreed to serve as personal representative to defend this action on behalf of Mr. O'Nolan and Mr. McNamara. Mr. Hines has served a similar role before. *See* Docket Entry 101, *DuBoise v. City of Tampa, et al.*, No. 21-cv-2328 (M.D. Fla.).

### C. Florida Law Empowers Courts to Appoint Personal Representatives

This approach is consistent with Florida procedure, as described in *Cameron*, which holds that the plaintiff in a case against a deceased wrongdoer can petition the court to appoint a representative for the deceased wrongdoer, and the court can appoint one. 113 So. 2d at 390 (Fla. Dist. Ct. App. 1959) ("this case the plaintiffs, as interested parties, … made the proper motion for substitution of the representative of the deceased defendant. For, where a party to a personal action dies, the legal representatives of the deceased should be substituted or any other appropriate party as may be provided by law"). No estate is needed. While Mr. Hopps has been unable to find any Florida federal district court Section 1983 cases borrowing this state-law procedure, Illinois's procedure is instructive.

Illinois has a similar procedure. In Illinois, "[i]f a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof, and the cause of action survives … (2) if no petition has been filed for letters of office for the deceased's estate, the court … may appoint a special representative for the

8

deceased party for the purposes of defending the action." 735 ILCS 5/12-209. In other words, just like Florida, if the claim survives, then a court can appoint a representative, and the representative can be substituted as a defendant, even without an estate.

Based on this protocol, federal courts in Illinois routinely appoint representatives to defend civil rights lawsuits on behalf of deceased wrongdoers. *See, e.g., Harris for Est. of Harris v. Zuley*, No. 23 C 14220, 2024 WL 1739913, at *1 (N.D. Ill. Apr. 23, 2024); *Sopron v. Cassidy*, No. 19-CV-08254, 2022 WL 2316204, at *1 (N.D. Ill. June 28, 2022); *Deleon-Reyes v. Guevara*, No. 18-CV-01028, 2019 WL 1200348, at *2 (N.D. Ill. Mar. 14, 2019). The same reasoning applies here, and this Court can likewise borrow this procedure from Florida state law. 42 U.S.C. § 1988.

## II.   Section 733.710(1) Cannot Eliminate Mr. Hopps's Civil Rights Case

To the extent this Court evaluates the effect that Section 733.710(1) has on the relief Mr. Hopps is seeking, this statute cannot bar Mr. Hopps's claims because it is a statute of repose and would bar Mr. Hopps's civil rights claims. *May v. Illinois Nat. Ins. Co.*, 771 So. 2d 1143, 1150, 1155 (Fla. 2000).

For one, a federal court can look to state law only if state law is not inconsistent with Section 1983. But if state law undermines the purpose of Section 1983, or prevents a plaintiff from seeking relief under Section 1983, the state law cannot apply. *Robertson*, 436 U.S. at 590; *Gilmere v. City of Atlanta, Ga.*, 864 F.2d 734, 740 n.7 (11th Cir. 1989). If this Court applied Section 733.710(1), it would eliminate altogether Mr. Hopps's opportunity to bring this case. That is inconsistent with Section 1983's purpose, and is not allowed. *Robertson*, 436 U.S. at 590.

Second, statutes of repose do not apply in federal civil-rights actions whatsoever. As the Eleventh Circuit explained in *Moore v. Liberty National Life Insurance Co.*, courts hearing Section 1983 cases can borrow from state law only if there is a deficiency in federal law, and federal law is not deficient because it lacks a statute of repose for Section 1983 claims. 267 F.3d 1209, 1215 (11th Cir. 2001). Federal courts across the country have acknowledged this straightforward reasoning and declined to incorporate state statutes of repose in section 1983 cases. *See, e.g.*, *Blackmon v. Holder*, No. 5:20-CV-524-FL, 2021 WL 2877902, at *5 (E.D.N.C. July 8, 2021) (collecting cases); *Heaton v. Stirling*, No. 2:19-0540-RMG, 2020 WL 838468, at *2 (D.S.C. Feb. 18, 2020); *Chapman v. Rhoney*, Civil No. 1:10cv258, 2012 WL 1944863, at *3 (W.D.N.C. May 30, 2012); *Lowery v. County of Riley*, No. 04–3101–JTM, 2005 WL 1242376, at *5 (D. Kan. May 25, 2005) ("The general rule is that a federal civil rights action is subject to the state statute of limitations, but not the state statute of repose."); *Craft v. Vanderbilt Univ.*, 18 F. Supp. 2d 786, 798 (M.D. Tenn. 1998). Thus, Section 733.710(1) cannot be incorporated into this case.

**III. The Claims Against the Decedents Are Essential to Mr. Hopps's Civil Rights Case**

It is important to place this motion in context. Mr. Hopps's federal suit seeks to vindicate the willful deprivations of his constitutional rights that sent him to prison for three decades for an armed robbery he did not commit. Mr. Hopps alleges that Mr. O'Nolan and Mr. McNamara were instrumental in his wrongful conviction, and his claims against them are essential to his efforts to obtain some measure of justice.

Appointing personal representatives and substituting them into this case will simply allow Mr. Hopps to get to the starting line and begin to litigate the merits of his claims in federal court.

Section 1983 serves a vital public interest by allowing Mr. Hopps to hold the officers responsible for his wrongful conviction to account. Section 1983 was created "not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations." *Owen v. City of Independence.*, 445 U.S. 622, 651 (1980). Preventing Mr. Hopps from pursuing his claims against the decedents would absolve them, and the police department, of their misconduct. Mr. Hopps's federal lawsuit will also help to expose the breadth and depth of misconduct that occurred in his case and was concealed for decades. Because the federal claims serve a critical deterrent purpose, Mr. Hopps should be permitted to pursue those claims on their merits in federal court against each wrongdoer, which includes Mr. O'Nolan and Mr. McNamara.

Along those lines, Mr. Hopps has a strong interest in avoiding an "empty chair" problem. McNamara and O'Nolan were centrally involved in securing Mr. Hopps's wrongful conviction. Mr. Hopps alleges, among other things, that these officers knowingly fabricated evidence to inculpate him in a murder that he did not commit. If Mr. Hopps is unable to bring claims against the representatives of the deceased officers who harmed him, the living defendant will be able to point the finger at the deceased officers and thereby try to avoid liability.

Finally, regardless of whether Mr. Hopps is ultimately able to recover any damages award from the deceased wrongdoers, Florda law allows for indemnification of officers who commit constitutional violations. *See* Fla.St. § 768.28(5)(a). If successful, Mr. Hopps can seek to collect any damage award through indemnification or any insurance that covers the officers' misconduct.

### IV. This Court Has Authority to Substitute the Personal Representative

Federal Rule of Civil Procedure 25(a)(1) provides that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party." Thus, once this Court appoints Mr. Hines as personal representative for O'Nolan and McNamara, it can substitute him for both defendants.

### CONCLUSION

For the foregoing reasons, Mr. Hopps respectfully asks this Court to appoint Mr. Hines as personal representative to defend this lawsuit on behalf of Mr. O'Nolan and Mr. McNamara, and substitute him for both defendants.

### LOCAL RULE 3.01(g) CERTIFICATION

Plaintiff certifies that he conferred in good faith with counsel for Defendant City of Tampa about this motion over the phone on May 7, 2025. Defendant City of Tampa opposes this motion.

                    Respectfully submitted,

By:   <u>/s/    Rachel Brady</u>
       *One of Hopps's Attorneys*

| | |
|---|---|
| Jon Loevy | Jonathan P. Picard |
| Gayle Horn | Human Rights Defense Center |
| Heather Lewis Donnell | P.O. Box 1151 |
| Rachel Brady | Lake Worth, FL 33460 |
| LOEVY & LOEVY | (561) 360-2523 |
| 311 N. Aberdeen St. | |
| Chicago, IL 60607 | |
| (312) 243-5900 | |

## **CERTIFICATE OF SERVICE**

     I, Rachel Brady, an attorney, hereby certify that on May 23, 2025, the foregoing was filed with the Court's CM/ECF system and thereby served all counsel of record electronically.

                                    Respectfully Submitted,

                                    /s/ Rachel Brady