UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TONY HOPPS,

       Plaintiff,

v.                        Case No. 8:24-cv-2806-VMC-AEP

CITY OF TAMPA, ET AL.,

       Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Detective Gene Strickland's Motion to Dismiss (Doc. # 53), filed on June 5, 2025. Plaintiff Tony Hopps responded on June 26, 2025. (Doc. # 56). For the reasons that follow, the Motion is granted in part and denied in part.

## I.   **Background**

Plaintiff Tony Hopps was convicted of the burglary and robbery of Ruby and Dunbar Dyches. (Doc. # 48 at 2). Over three decades later, his conviction was vacated and the charges were dismissed. (Id.). The robbery occurred on January 25, 1990, when the Dycheses returned to their hotel room in Tampa, Florida. (Id. at 5). At around 3:15 p.m., two men robbed the Dycheses at gunpoint. (Id.). "The robbery was very brief, and the Dycheses had extremely limited

1

opportunities to view the two perpetrators, making a legitimate identification impossible." (Id.).

At the time of the robbery, Mr. Hopps was outside his home across town with his neighbor. (Id. at 6). At about 3:49 p.m. that day, Mr. Hopps was detained by Officer Mark Scott regarding an unrelated investigation. (Id.). At that time, Defendant Detective Gene Strickland also spoke to Mr. Hopps and took a photo of Mr. Hopps, in which he has a beard. (Id.).

The Dycheses were unable to describe one of the two robbers. (Id.). As to the second robber, Mr. Dyches thought he was between 5'8" and 5'10" tall, but Mrs. Dyches thought he was between 5'4" and 5'5" tall. (Id. at 7). They each agreed that he had a mustache but no beard, was muscular, and was wearing camouflage pants with a cap. (Id.). At the time he was arrested, Mr. Hopps had a beard, was not muscular, and was not wearing camouflage pants or a hat. (Id.).

The next day, police apprehended a stolen vehicle, inside of which were Mrs. Dyches's stolen items. (Id. at 7). Four men were seen running from the scene, while at the same time, Mr. Hopps was detained in jail due to his arrest from the previous day. (Id.).

Mr. Hopps alleges that he had a "history" with Defendant Detective George McNamara, such that Detective McNamara

"decided to pin the Dyches robbery" on Mr. Hopps, even though he knew that Mr. Hopps could not have committed the robbery. (Id. at 7-8).

The officers provided a photo array to the Dycheses in the hope that they could identify the robbers. (Id.). The photo array contained six persons "based solely on the fact that they either had been arrested or were suspects in other robberies. There was no legitimate evidence that they were suspects in the Dyches robbery." (Id.). A photo of Mr. Hopps was included in the array, but it was an old picture in which he did not have a beard. (Id. at 9). The Dycheses lived in Georgia, such that the officers mailed them the photo array, but Defendant Detective J.D. O'Nolan told them over the phone that the suspect's photo was in the array. (Id. at 9-10).

Upon viewing the array, the Dycheses selected Mr. Hopps. (Id. at 11). However, they discussed their selections with each other, as they had not been instructed otherwise by the officers. (Id. at 10). Detectives Strickland and O'Nolan both interviewed Mr. Hopps, who denied any involvement with the Dyches robbery. (Id. at 11). Prior to the interview, Detective Strickland reviewed the police reports regarding the Dyches robbery, such that he learned of the Dycheses' description of the suspects, the photo array and correspondences between

3

Detective O'Nolan and the Dycheses, and the reports about their stolen items being found in a car while Mr. Hopps was detained in jail. (Id.).

Mr. Hopps claims that he was then prosecuted for the Dyches robbery "based solely on the Dycheses' fabricated identifications." (Id. at 12). At trial, Mr. Hopps called Detective Strickland "to confirm that he could not have committed the crime because he was across town speaking with him shortly thereafter." (Id. at 13). However, Detective Strickland testified that he "did not know the date and time that he detained Plaintiff on January 25 even though the dispatch records, which he possessed, demonstrated when [he] spoke to Plaintiff and took his picture." (Id.). On June 26, 1990, Mr. Hopps was found guilty of the Dyches robbery and burglary and was sentenced to concurrent life sentences. (Id.).

Decades later, the Conviction Review Unit ("CRU") of the Thirteenth Judicial Circuit State's Attorney's Office reviewed and reinvestigated the case. (Id. at 13-14). The CRU made the following findings: the photo array was improper due to the way it was administered; Mr. Hopps did not match the description that the Dycheses gave the officers; and Mr. Hopps could not have committed the robbery as he was at his home

and subsequently detained by Detective Strickland at around the same time as the robbery. (Id.). After this report, Mr. Hopps's conviction was overturned and the charges against him were dismissed. (Id.).

Mr. Hopps initiated this lawsuit on December 5, 2024. (Doc. # 1), and he filed an amended complaint on December 23, 2024. (Doc. # 25). Detective Strickland moved to dismiss Mr. Hopps's amended complaint (Doc. # 40), which the Court granted with leave for Mr. Hopps to amend. (Doc. # 44).

Mr. Hopps filed his second amended complaint on May 12, 2025, which is the operative complaint. (Doc. # 48). The complaint lists the following defendants: the City of Tampa, Detective Strickland, Detective O'Nolan, Detective McNamara, and as-of-yet unknown employees of the City of Tampa. (Id. at 1). Five counts are alleged against Detective Strickland, each under 42 U.S.C. § 1983: a due process violation (Count One); illegal detention and prosecution under the Fourth Amendment (Count Two); illegal detention and prosecution under the Fourteenth Amendment (Count Three); failure to intervene (Count Four); and conspiracy to deprive constitutional rights (Count Five). (Id.).

Detective Strickland filed his Motion to dismiss the claims against him in the second amended complaint on June 5,

2025. (Doc. # 53). Mr. Hopps responded on June 26, 2025 (Doc. # 56), and the Motion is ripe for review.

## II.  **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters

judicially noticed. La Grasta v. First Union Sec., Inc., 358
F.3d 840, 845 (11th Cir. 2004).

### III. **Analysis**

Detective Strickland moves to dismiss all five Counts
that are pled against him. (Doc. # 53). He argues that he is
entitled to qualified immunity on each Count and that each
Count fails to state a claim against him. (Id.). He also
argues that each Count is barred by the statute of
limitations.

The Court can quickly dispense with Detective
Strickland's argument that Mr. Hopps's claims are barred by
the statute of limitations. Detective Strickland is correct
that "Florida's four-year statute of limitations applies to
such claims of deprivation of rights under 42 U.S.C. §§ 1983."
Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003). But
Detective Strickland fails to acknowledge that "a § 1983 cause
of action for damages attributable to an unconstitutional
conviction or sentence does not accrue until the conviction
or sentence has been invalidated." Heck v. Humphrey, 512 U.S.
477, 489-490 (1994). As Mr. Hopps's conviction was vacated on
August 23, 2021, and this lawsuit was initiated on December
5, 2024, this lawsuit was filed within the four-year statute

of limitations. Thus, the Court will analyze Detective Strickland's other arguments for dismissal.

"In assessing qualified immunity at the motion to dismiss stage, 'the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined.'" Aguirre-Jarquin v. Hemmert, No. 6:20-cv-25-RBD, 2020 WL 13664132, at *6 (M.D. Fla. Aug. 28, 2020) (quoting Keating v. City of Miami, 598 F.3d 753, 760 (11th Cir. 2010)). Thus, the Court does not need to separately analyze whether the Counts fail to state a claim apart from its analysis of whether qualified immunity should apply.

Notably, the parties do not dispute that Detective Strickland was acting pursuant to his discretionary authority when the alleged constitutional violations occurred. See Hinson v. Bias, 927 F.3d 1103, 1116 (11th Cir. 2019) ("To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. The term 'discretionary authority' covers all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." (citations and internal quotation marks omitted)).

"An official performing discretionary functions enjoys qualified immunity unless: (1) the plaintiff alleges facts establishing that the defendant's conduct violated a constitutional or statutory right; and (2) the violated right was clearly established at the time of the defendant's alleged misconduct." Wilson v. Sec'y, Dep't of Corr., 54 F.4th 652, 660 (11th Cir. 2022) (internal quotations omitted). Courts are "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." Youmans v. Gagnon, 626 F.3d 557, 562 (11th Cir. 2010).

A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Johnson v. City of Miami Beach, 18 F.4th 1267, 1273 (11th Cir. 2021) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). "The usual way of establishing that a constitutional violation was clearly established law is by pointing to a case, in existence at the time, in which the Supreme Court or [the Eleventh Circuit] found a violation based on materially similar facts." Id. (citation omitted).

A "plaintiff can also show that a broader, clearly established principle should control the novel facts of a

9

particular case." Waldron v. Spicher, 954 F.3d 1297, 1305 (11th Cir. 2020). "[T]he principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." Id. (citation omitted). That is, "in the light of pre-existing law, the unlawfulness must be apparent." Id. (citation omitted). "Third, a plaintiff could show that the case 'fits within the exception of conduct which so obviously violates [the] Constitution that prior case law is unnecessary.'" Id. (citation omitted). "This third test is a narrow category encompassing those situations where 'the official's conduct lies so very obviously at the very core of what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding lack of case law.'" Id. (citation omitted).

### A. **Count One**

Detective Strickland argues that he is entitled to qualified immunity on Count One (Doc. # 53 at 5-9), which alleges that he, and Detectives O'Nolan and McNamara,

deprived Mr. Hopps of "his constitutional right to due process and his right to a fair trial." (Doc. # 48 at 15). Mr. Hopps does not oppose Detective Strickland's Motion as to Count One. (Doc. # 56 at 1 n.1). Accordingly, the Court grants the Motion as to Count One and dismisses with prejudice Count One as against Detective Strickland.

### B. **Counts Two and Three**

Detective Strickland argues that he is entitled to qualified immunity on Counts Two and Three. (Doc. # 53 at 13-14, 16-21). The Court disagrees.

Counts Two and Three are almost identical. (Doc. # 48 at 17-19). They each contain allegations of illegal detention and prosecution under the Fourth and Fourteenth Amendments respectively. (Id.). Their allegations are identical, except that Count Two references the Fourth Amendment while Count Three references the Fourteenth Amendment. (Id.). As the Counts allege the same substantive claim, the Court analyzes the Counts together.

The Eleventh Circuit recognized prior to the events of this case that "[t]he law is 'clearly established' that an arrest without a warrant or probable cause to believe a crime has been committed violates the fourth amendment." Herren v. Bowyer, 850 F.2d 1543, 1547 (11th Cir. 1988). Similarly, the

11

Supreme Court had already recognized that the Fourteenth Amendment dictates that an "arrest be made only on probable cause." Baker v. McCollan, 443 U.S. 137, 145 (1979). But the Supreme Court clarified "that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and [the Supreme Court has] indicated that in such cases those officials . . . should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641 (1987). "Although the law does not require 'that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person,' due process does require that some steps be taken to eliminate doubts concerning identity that exist prior to obtaining the warrant and to arrest." Tillman v. Coley, 886 F.2d 317, 321 (11th Cir. 1989) (quoting Baker, 443 U.S. at 145).

The Court finds that Mr. Hopps has alleged sufficient facts that, if true, establish that Detective Strickland violated these clearly established rights. Mr. Hopps alleges that Detective Strickland was present when Mr. Hopps was arrested (for an unrelated crime) across town at around the same time the armed robbery of the Dycheses occurred. (Doc. # 48 at 6). He asserts that after the arrest on the unrelated

12

crime but prior to the interrogation of Mr. Hopps, Detective Strickland reviewed the police reports of the Dyches robbery. (Id. at 11). Mr. Hopps claims that from this review Detective Strickland should have recognized that Mr. Hopps was across town at the time of the Dyches robbery, that the Dycheses' identification of Mr. Hopps was flawed, and that the Dycheses' stolen belongings were recovered during the apprehension of a stolen vehicle when Mr. Hopps was detained at that time. (Id.). By learning each of these facts from the police report, an officer in Detective Strickland's shoes should reasonably have known that Mr. Hopps could not have committed the Dyches robbery. See Stephens, 901 F.2d at 1573 (directing courts to favor the plaintiff with all reasonable inferences from the allegations in the complaint).

When accepting the allegations in the complaint, Mr. Hopps has adequately alleged that Detective Strickland arrested Mr. Hopps even though he lacked probable cause. See Herren, 850 F.2d at 1547 ("[A]n arrest without a warrant or probable cause to believe a crime has been committed violates the fourth amendment."). Thus, Mr. Hopps has alleged that Detective Strickland violated a clearly established right. See Id. (holding that it is a "clearly established right" that a person cannot be arrested without probable cause).

Detective Strickland is not entitled to qualified immunity on Counts Two and Three, and his Motion is denied as to Counts Two and Three. Detective Strickland may raise his qualified immunity defense again at the summary judgment stage when the parties have had the benefit of discovery.

### C. **Count Four**

Detective Strickland argues that he is entitled to qualified immunity on Count Four. (Doc. # 53 at 19-20). The Court agrees.

Count Four asserts a claim for failure to intervene. (Doc. # 48 at 19-20). At the time of the arrest and prosecution in 1990, both the Supreme Court and Eleventh Circuit had not yet recognized a § 1983 claim for a failure to intervene in circumstances similar to this case. Just four years before then, the Eleventh Circuit had recognized that "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986). However, the Eleventh Circuit held in Jones, issued in 1999, that:

> While officers have been subject to liability for failing to intervene when another officer uses excessive force, there is no previous decision from

14

> the Supreme Court or this Circuit holding that an
> officer has a duty to intervene and is therefore
> liable under the circumstances presented here.
> There is no controlling authority clearly
> establishing that once a police officer knows
> another officer has fabricated a confession in a
> police report for a warrantless arrest, that police
> officer has a constitutional duty to intervene to
> stop the other officer's conduct.

Jones v. Cannon, 174 F.3d 1271, 1286 (11th Cir. 1999)
(internal citations omitted).

Here, Mr. Hopps alleges that Detective Strickland, by reviewing the police reports before participating in the interrogation of Mr. Hopps, should have recognized that Mr. Hopps was innocent but failed to intervene. (Doc. # 48 at 11). But at that time, the duty to intervene was focused upon a situation in which another officer uses excessive force, and did not extend to situations where an officer knows that another officer engaged in other forms of malfeasance to obtain an arrest. Jones, 174 F.3d at 1286; see also Lewis v. Blue, No. 2:09-cv-862-WKW, 2010 WL 730210, at *6 (M.D. Ala. Mar. 3, 2010) ("[C]ase law seems to indicate that failure to intervene claims are cognizable only when related to excessive force violations."); McGuire v. City of Montgomery, No. 2:11-cv-1027-WKW, 2013 WL 1336882, at *14 (M.D. Ala. Mar. 29, 2013)("[I]t is unclear whether the duty to intervene exists for constitutional deprivations other than excessive

force."), order clarified sub nom. McGuire v. Murphy, No. 2:11-cv-1027-WKW, 2013 WL 12304218 (M.D. Ala. Sept. 9, 2013). Accordingly, a failure to intervene in this context was not a "clearly established" constitutional violation in 1990. See Hope v. Pelzer, 536 U.S. 730, 739 (2002) ("For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (internal quotation and citation omitted)).

Therefore, Detective Strickland is entitled to qualified immunity on Count Four. See Wilson, 54 F. 4th at 660 ("[I]t is not necessary to decide both prongs [of the qualified immunity analysis] where it is plain that the right is not clearly established."). The Court dismisses Count Four as it is pled against Detective Strickland and will not grant leave for Mr. Hopps to amend the Count because amendment would be futile. See Boyd v. Warden, Holman Corr. Facility, 856 F.3d 853, 864 (11th Cir. 2017) ("An amendment is considered futile when the claim, as amended, would still be subject to dismissal."). The Motion is granted in part accordingly.

### D. **Count Five**

Finally, Detective Strickland argues that he is entitled to qualified immunity for Count Five (Doc. # 40 at 14-20),

which alleges that Detective Strickland partook in a conspiracy with Detectives McNamara and O'Nolan to deprive Mr. Hopps of his constitutional rights. (Doc. # 48 at 20-21). The Court agrees that Count Five fails to establish that a constitutional right was violated.

Detective Strickland first argues that Mr. Hopps fails to allege a constitutional violation because Count Five is barred by the "intracorporate conspiracy doctrine." (Doc. # 40). "[T]he intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself . . . . Under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1261 (11th Cir. 2010) (internal quotations and citations omitted). "The doctrine applies to public entities such as the City and its personnel." Denney v. City of Albany, 247 F.3d 1172, 1190 (11th Cir. 2001). However, there is a "long-established conclusion that the intracorporate conspiracy doctrine does not apply to criminal conspiracies." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1035 (11th Cir. 2000). "The criminal conspiracy exception applies not only in criminal cases, but also in civil cases where a criminal

conspiracy is alleged." <u>Battiste v. Jenne</u>, No. 1:05-cv-22970-PCH, 2006 WL 3665420, at *1 (S.D. Fla. Nov. 15, 2006).

The intracorporate conspiracy doctrine does not apply here because Mr. Hopps has alleged a criminal conspiracy. He alleges that Defendants engaged in a conspiracy to "deprive him of his constitutional rights." (Doc. # 48 at 20). It is a federal crime when "two or more persons conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." 18 U.S.C. § 241. Accordingly, Mr. Hopps's allegation within Count Five is not subject to the intracorporate conspiracy doctrine. <u>See</u> <u>Battiste</u>, 2006 WL 3665420, at *2 ("Plaintiffs allege that the [] Defendants conspired with each other to deprive them of their Constitutional rights. Such conduct is not only civilly actionable under 42 U.S.C. § 1983, but also criminal under 18 U.S.C. §§ 241 and/or 242. Therefore, the intracorporate conspiracy doctrine does not apply in this case."); <u>Aque v. Home Depot U.S.A., Inc.</u>, 629 F. Supp. 2d 1336, 1344 (N.D. Ga. 2009) ("[A] claim brought under a civil statute . . . which alleges conduct that qualifies as a crime under 18 U.S.C. § 241, suffices to exempt the claimed conspiracy from the intracorporate conspiracy doctrine.");

18

Lozman v. City of N. Bay Vill., No. 1:07-cv-23357-CMA, 2008 WL 11411196, at *3 (S.D. Fla. Aug. 15, 2008) ("[T]he intracorporate conspiracy doctrine does not bar [plaintiff]'s Section 1983 conspiracy claim in this case.").

Therefore, the intracorporate conspiracy doctrine does not apply. The Court must analyze whether Detective Strickland is entitled to qualified immunity on Count Five.

In 1988, the Eleventh Circuit noted that "[t]he Supreme Court and this court's predecessor have recognized that a conspiracy to violate constitutional rights states a claim under § 1983." Strength v. Hubert, 854 F.2d 421, 425 (11th Cir. 1988), overruled in part on other grounds by Whiting v. Traylor, 85 F.3d 581, 584 n. 4 (11th Cir. 1996); see also Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (recognizing that conspiracy actions may be brought under Section 1983). Thus, it was clearly established in 1990 that a conspiracy to violate civil rights could be a constitutional violation.

But still, "[t]o state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his

constitutional rights." <u>Weiland v. Palm Beach Cnty. Sheriff's Off.</u>, 792 F.3d 1313, 1327 (11th Cir. 2015). The plaintiff "has the burden to show an actual denial of his constitutional rights underlying the cover-up conspiracy. It is not our job to divine a constitutional violation to support [the plaintiff]'s conspiracy claim. We are left completely in the dark about the constitutional basis for the claim." <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1332 (11th Cir. 2008).

Mr. Hopps claims that Defendants "reached an agreement among themselves to frame Plaintiff for the Dyches robbery, regardless of Plaintiff's guilt or innocence, and thereby to deprive him of his constitutional rights." (Doc. # 48 at 20). However, he never identifies which constitutional rights were violated. (<u>Id.</u>) Without identifying a constitutional right, the Court cannot determine whether the civil rights conspiracy in question was a clearly established law.

In addition, Mr. Hopps must do more than merely allege that the conspiracy existed. <u>See</u> <u>Albra v. City of Fort Lauderdale</u>, 232 F. App'x 885, 890-91 (11th Cir. 2007) ("The plaintiff does not have to produce a smoking gun to establish the understanding or willful participation required to show a conspiracy, but must show some evidence of agreement between the defendants. To allege a conspiracy, a plaintiff must make

particularized allegations that are more than vague or
conclusory." (internal quotations and citations omitted)).
The Court finds that Mr. Hopps's vague and conclusory
allegations, which do not include any particularized claims
about the machinations of the alleged conspiracy, are
insufficient to establish a claim for civil rights
conspiracy. See Diaz-Martinez v. Miami-Dade Cnty., No. 1:07-
cv-20914-JAL, 2009 WL 2970468, at *9 (S.D. Fla. Sept. 10,
2009) ("Plaintiff's conclusory allegation that the police
defendants agreed among themselves and with other individuals
to act in concert in order to deprive Plaintiff of his clearly
established Fourth and Fourteenth Amendment rights is simply
insufficient to satisfy Plaintiff's burden." (internal
citations and quotations omitted)).

As Mr. Hopps's allegations both fail to identify a
constitutional violation and lack the necessary specificity,
the Court concludes that Count Five, as pled, does not state
a constitutional violation. Accordingly, the Court grants the
Motion in so far as it seeks the dismissal of Count Five as
against Detective Strickland. However, the Court dismisses
the Count without prejudice and grants leave for Mr. Hopps to
amend his complaint. See Hall v. United Ins. Co. of Am., 367
F.3d 1255, 1262 (11th Cir. 2004) ("Ordinarily, if the

underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, leave to amend 'should be freely given.'" (quoting Fed. R. Civ. P. 15(a)) (internal citations and quotations omitted)); see also Chen ex rel. V.D. v. Lester, 364 F. App'x 531, 538 (11th Cir. 2010) (noting that leave to amend may be granted if it is possible that plaintiff can defeat defendants' qualified immunity claims). In doing so, Mr. Hopps should, if possible, identify the constitutional right or rights that Defendants conspired to violate, and provide particularized details about the conspiracy.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

1) Defendant Detective Gene Strickland's Motion to Dismiss (Doc. # 53) is **GRANTED** in part and **DENIED** in part.

2) Counts One and Four are **DISMISSED** with prejudice as against Detective Strickland.

3) Count Five, as pled against Detective Strickland, is **DISMISSED** with leave to amend.

4) Plaintiff Tony Hopps may file his third amended complaint within fourteen days of the date of this Order. Defendants should file their answers to the third amended complaint fourteen days thereafter.

**DONE** and **ORDERED** in Chambers in Tampa, Florida,

this 24th day of July, 2025.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE